I do not want to mispronounce the defendant's name, but Mr. Beck. May it please the court. My name is Brandon Beck, and I represent Eliseo Godoy, the appellant here today. Your honors, the approach to resolving this case is a straightforward application of the text of the guidelines in conjunction with recent binding judicial precedent. And there are three reasons why this court should reverse and remand for re-sentencing under the 2015 version of the guidelines. First, the 16 level enhancement only applies if the Texas burglary statute is a crime of violence under the guidelines. Harold tells us it is not. Second, the eight level enhancement only applies if the statute is an aggravated felony. Demaya tells us it is not. And third, neither of these conclusions is at odds with Beckles. Your honors, the starting place in this case should be the text of the 2015 guidelines. And as the topic of most recent discussion, I'd like to begin with the eight level aggravated felony enhancement. Your honors, what's important to note here is that section 2L1.2 does not itself define aggravated felony. Instead, it delegates that responsibility to Congress by cross-reference. And the big takeaway here is that the sentencing commission, by its text, intended the meaning of aggravated felony to be coterminous with its statutory meaning. I'm getting this from comment 3 of the application notes, where the sentencing commission states application of subsection B1C, which is the aggravated felony enhancement. It states, for purposes of subsection B1C, aggravated felony has the meaning given that term in section 101A43 of the INA, parenthesis 8 U.S.C. 1101A43. So when we're trying to evaluate the breadth of what an aggravated felony is, the sentencing commission tells us that we turn to the United States Code. In particular, section 1101A43. When we turn there, we see that Congress has defined aggravated felony about 80 different ways. Of those, the relevant subsection here today is subsection F. That subsection says that an aggravated felony is any offense that satisfies 18 U.S.C. section 16, which is the statutory definition of crime of violence. Just recently, the U.S. Supreme Court has held in Sessions v. DiMaia, held that half of that particular provision, specifically subsection B, is unconstitutionally vague in the very context of 1101A43. And what we're asking today is for this court to give meaning to DiMaia's holding and also to respect the text of the guidelines, which tells us that the meaning of aggravated felony for guidelines purposes is the same meaning that Congress gave in 1101A43. Surely you agree. Tell me if you don't. But if the language of 16B were just cut and pasted, written directly into the guidelines, that would not be subject to a vagueness challenge, correct? That's correct, Your Honor. So what is the meaningful difference then between the language being directly cut and incorporating that language by reference? Your Honor, the meaningful difference is that we have to give meaning to the sentencing commission's decision to delegate the authority to Congress to define the breadth of what an aggravated felony is. But we don't know that they delegated. I mean, the time the guidelines were written, the statute said what it said. And I think if Congress were to amend that statute, the guidelines that the commission might take another look at it. I don't necessarily agree with you that they delegated it to Congress. The guidelines change all the time. The commission is free to change them as they see fit. So there's no question at the time this guideline was drafted that we already had the definition on the books. Your Honor, at the time this guideline was drafted, it also, excuse me, let me back up. I think the point I want to make is that when the sentencing commission wants to cut and fix it for guideline purposes, it knows how to do that when it wants to. And we saw that very same example when we saw the guideline. Okay, why would the commission do it one way for the Immigration Act and another for the Armed Career Criminal Act? I think the reason the commission would do that, and we don't have legislative history here and I'm not sure that that necessarily would be relevant. I think we have to take the text for what it is. But what the sentencing commission perhaps was doing is thinking about aggravated felony in the context of immigration as having the most severe immigration consequences. And the parties involved here that are in the best position to be able to evaluate what those consequences are and how they should proceed in the future are Congress and the U.S. Supreme Court by way of judicial review. So is it your view that 16b by virtue of DeMaia is now wholly repealed, it is off the books for any and all purposes? Yes, Your Honor, that is my position and I want to tell you where I'm getting that from. In a case before this court, the en banc court, United States v. Gonzalez-Longoria, which DeMaia overruled by name, one of the cases cited there is Village of Hoffman Estates v. Flipside. And when the court cited that provision, the court said, and I'm quoting, declaring a statutory definition void for vagueness would have wide-ranging effects because the Supreme Court holds that a successful vagueness challenge renders the law incapable of any valid application. Now that's also consistent with what the Supreme Court had held previously in United States v. Petrillo in 1947, holding that the result of declaring a statute unconstitutionally vague is that the statute is void in toto, barring all further actions under it in that and every other case. Now what's important here, though, is that we are not making a vagueness challenge to a guidelines provision. The Supreme Court has told us in this very context, 1101-A43, this provision is void for vagueness. This provision is unconstitutional. And I addressed part of your question about the breadth of a successful vagueness challenge. But I also want to talk about it in terms of time. A successful vagueness challenge is also retroactive through all time. So the law itself- No convictions under that statute. Absolutely, Your Honor. Now, when we get to habeas review, it certainly gets more complicated. But if we look to Welch v. United States, which the Supreme Court decided in 2016, the Court explained all new substantive rules apply retroactively. I was going to get to that. Assuming that the Supreme Court does a Welch-like opinion for the Immigration Act, what does that do to all the sentences, the 8-level, 16-level, depending on which regime you were sentenced under? What does that do on habeas? Well, Your Honor, I think the answer to that question is very complex. I think it depends upon whether it's a first 2255 on the basis of intervening law or the person is seeking a second or successive attempt at habeas review. So I think that will have to play out just the same way it has played out- What's your answer? My answer is yes, Your Honor. I mean, this is a substantive rule. It's a new rule. In fact, in Welch, the Supreme Court defines substantive as a rule that alters the conduct or class of persons the law punishes. The Welch court saw that as absolutely the case in Johnson. And I think the same result would be here. 16b, you would agree, does not itself fix a sentence. It does not itself proscribe conduct. That's exactly right, Your Honor. But if we look to how it's incorporated in 1101-843, that's certainly the case, and that's the same conclusion reached by the Ninth Circuit. The important takeaway here is not even necessarily Welch, which deals with habeas review, but Griffith versus Kentucky. Well, it's important to us. It could be. It's absolutely going to be significant down the line, absolutely. What I meant to say, Your Honor, is what's important to Mr. Godoy, since we are on direct appeal, is Griffith versus Kentucky, which is simply the straightforward rule that any new rule, while a case is pending, even at the search stage- But we're just exploring where your position would take us, potentially. If 16b is now no longer can be used for any purpose at all, it would seem that your logic would lead every person who was sentenced using 16b as a definition for aggravated felony as a valid habeas claim. If they can show that the only way that they were sentenced or their sentence was henced was under this now unconstitutional definition, that's absolutely true, just as we've seen with Johnson and with Welch in that context. So I think they are very similar in that way. So my answer to your question is yes, Your Honors. I want to come back to some of the implications of your question, Judge Willett, about what's different when we have a text that's copied and pasted into the guidelines versus being a standalone statutory provision. I think we see the difference, how it played out in the Johnson and Beckles opinions, which led to divergent results. Of course, there are very good reasons completely apart from the vagueness of the provisions themselves that we cannot challenge the guidelines for vagueness. If the court allowed the guidelines to be challenged for vagueness, certainly the same result in Beckles would have been the result in Johnson, unless there was a significant difference in the actual context. But here, we're not challenging a guideline for vagueness. We're not even challenging a statute for vagueness. What we're saying is this court should apply the text of the 2015 guidelines as written. So it wouldn't be unconstitutional, Judge Willett, for this court to apply 16B in Mr. Godoy's case. It would just violate the text of the guidelines, because the guidelines tell us we look to 1101 when we're trying to evaluate the meaning of what an aggravated felony is, and that's certainly subjective. If the guidelines said if you were convicted under, if you're convicted of an offense that was described, if you actually convicted under 16B, if there were such a thing, I see your point here. But it's hard for me to understand your argument or accept it, actually, when it's just used for definitional purposes. They're not creating offense. There's no maximum, minimum sentence. It's just a definitional reference. In your honor, I think that's the same position the U.S. Supreme Court was in in DiMaia. Can you point me in DiMaia, and maybe you'll send us a short letter or something, but show me where in DiMaia does the Supreme Court suggest that it's holding there and validates every other scheme in federal law that incorporates 16B? Your honor, I want to answer your question by implication. So the straightforward answer to your question is we don't have that statement in DiMaia. At the same time, I'm not sure that we would expect that statement in DiMaia, given that the Ninth Circuit below had already applied it to 2L1.2 in Hernandez-Lara. But also, if we look to what DiMaia did, when you read the DiMaia opinion, it describes a circuit split. When it describes that circuit split, the case that it identifies as being on the losing side of the circuit split is this Court's en banc opinion in United States v. Gonzalez-Longoria. DiMaia, by name, overruled Gonzalez-Longoria, and Gonzalez-Longoria was the exact same procedural situation we have here. There was no hesitation. In that case, the person was 2L1.2, and this Court declined to hold that 16B is unconstitutional. And one of the reasons it did so, or at least when you read the concurrence, which forms in many ways the basis of the government's argument today, or the origin of its argument, one of the things Judge Jones said in the concurrence is, we need to hesitate about reaching 16B through 2L1.2, because that would make it unconstitutionally vague for all purposes. So you can't have it both ways. In DiMaia, the Court knew that Gonzalez-Longoria was through the 2L1.2 framework, and they reversed it by name. So that's my answer to your question by implication, Your Honor. Remind me, what was the conviction in that case? Your Honor, I assume it was a 1326A offense, since it was under the 2L1.2 framework. And I know that one of the big arguments, the big argument, was whether a sentencing enhancement applied.  Thank you. Well, just a minute, Mr. Baird. Yes, Your Honor. This is the disembodied voice that's out there all over Mississippi. I couldn't quite pick my spot, so I'm going to step over to my colleagues. You talked about Bill Huffman. The part of Huffman that you have cited to us is talking about a facial challenge. And then the Supreme Court said, facially, the statute involved there was unconstitutional, which means it's unconstitutional. There are no limiting instructions that could be put on it. It seems to me that that's a much different issue than what we're facing here, which is just picking up on what my colleagues have raised. You raise a very significant point, but do you have any response that we're not looking at a facial challenge for statute and no valid applications, we're looking at something that's been clearly unusable as a fence of conviction and as setting maximum sentences, but not unusable for judges who have discretion in considering all sorts of vague matters set out in the Guidelines. Do you have any response to that? Yes, Your Honor, I do. We are not making any challenge to a provision for constitutional purposes here. That happened in DiMaia, and that was certainly a facial challenge to that statute in DiMaia. What we're arguing today is that when you're dealing with a single, stand-alone statutory provision, a zebra cannot change its stripes. And I'm not aware of any precedent where you have a single statutory provision that has been struck down as unconstitutionally vague that is somehow able to stay alive for other purposes where it's not copied and pasted in a separate freestanding provision. And so I hope I've answered your question, Your Honor, and I'll give my opposing counsel an opportunity to explain why I'm wrong. Thank you. May it please the Court. Brian Portugal for the United States. I'm eager to address the Court's questions that were posed in the oral argument directive. Before I do, I would like to make one point that hasn't been sort of sussed out in the briefing, which focused on foreclosed issues. Mr. Godoy's complaint on appeal is predicated on an alleged ex post facto violation. The government's position is that such a violation does not arise where the law is settled at the time of sentencing and the district judge has to make her decision on which set of guidelines to follow based on settled law. Mr. Godoy's cited case of Pew v. United States makes clear that speculative changes in the law do not create an ex post facto violation, and in any event, the ex post facto clause is directed at legislative or quasi-legislative action and not at judicial interpretation. In this case, what the supplemental briefing does make clear is that Mr. Godoy does not have a meritorious issue for a different reason, and that is that his burglary convictions qualify as aggravated felonies. I note the ex post facto issue because I know the FPD is pressing this issue in other cases, and if the court chooses to resolve this case on the aggravated felony issue, I'd respectfully ask the court to reserve a determination of the ex post facto issue if the court wants to pretermine that issue. With respect to the aggravated felony issue, Beckles v. United States makes clear that the guidelines are not subject to vagueness challenges. DiMaia and Herald don't change that fact. DiMaia v. Sessions does not alter guideline cases, and Herald is not a crime of violence case. It is a case about the generic quality of burglary. Therefore, the ordinary case analysis still applies, and this Court's precedent still applies. Those cases ---- But what do we do with the footnote in DiMaia that it abrogates, essentially, Gonzalez-Longoria? It abrogates Gonzalez-Longoria, Your Honor, because Gonzalez-Longoria addressed the merits of the question whether 16b is unconstitutionally vague. The alternative route proposed by Judge Jones in her concurring opinion, just simply to say that the guidelines are not subject to vagueness challenges, was the path adopted by the Court in Beckles. So to the extent that there is any question about DiMaia's effect on Gonzalez-Longoria, it affects the Court's holding, but the separate decision in Beckles reaches the same result as the Jones concurrence would have in Gonzalez-Longoria. Mr. Beckles says that a sentence in court cannot, under DiMaia, can no longer look to, refer, consult for definitional purposes or otherwise 16b. That when the Court issued DiMaia, it says 16b for any and all purposes was invalid, even definitional. And so he would probably ask, you know, how can we tell the Court to rely in any manner, way, shape, or form, rely on a statute the Supreme Court has said is invalid? Well, what the Court said, Your Honor, specifically, was that it was unconstitutionally vague in its statutory application. The Supreme Court doesn't have the authority to remove language from a federal statute. That language still exists. It's just because of the notice problems, it can't be applied in a statutory case. But those notice issues do not arise, as the Court explained in Beckles, in a sentencing guideline provision. Can you think of other examples where the high court has held the statute unconstitutional for one purpose but not for other purposes? Absolutely, Your Honor. Johnson and Beckles. Johnson struck down the residual clause of the ACCA. That exact language appeared in the career offender guideline. And the Court said in Beckles that that same language that appeared in the career offender guideline was not subject to challenge and could be applied. Any other cases? I would have to dig deeper and perhaps file another letter brief. But to me, the Supreme Court's explanation that just last term they struck down something as unconstitutionally vague, but the identical language is okay to use going forward. But you've heard their argument that they didn't cut and paste the language from 16b into the guidelines section. They referenced a statute. And if the, quote, statute is off the books, unquote, you can't cross-reference it. Do you have a case that is on all fours with that? I don't know that I have one that comes immediately to mind, Your Honor. But the distinction between cutting and pasting and incorporating by reference, I think the Jones concurrence and Gonzalez-Longoria is the best explanation that it's just nonsensical. And there are good practical reasons in this case for the Sentencing Commission to have incorporated 1101-843 by reference, and that is that it's a really long provision. It goes on quite a ways in the U.S. Code. And to incorporate by reference is much simpler than copying and pasting all of that language into the text. Because Beckles says that the guidelines are not subject to vagueness challenges, the Court's precedent holding that burglary qualifies as an aggravated felony is still in effect. As I've said before, Herald and DeMaia don't change that. And for those reasons, this Court should affirm. Mr. Portio, can you hear me? I can, Your Honor.  I'm well, Judge. It seems to me that DeMaia, it's one thing to argue that Beckles applies the sentencing factors, sentencing guideline language that otherwise could be said to be vague. But at the time of this particular sentence, this particular defendant, that ruling had not yet been made that the chain you have to go through starting with the statute of conviction, figuring out what violent violence is, ending up with the definition in the INA, 16b thereafter, had not been declared to be unconstitutionally vague. Isn't there a risk if we just do what you're asking us to do and say that the district judge had the discretion to use a vague statute, a vague definition? The judge at that time, she was unaware of these rulings. Isn't a defendant potentially harmed, prejudiced, by applying, by ignoring this sort of ruling and saying the district judge's discretion doesn't matter anyway, even if she was unaware of these developments and these new sort of undermining of the applicability of the definitions in some contexts? What do you say about that allowing this to go forward because the district judge generally would have had this discretion even if he wasn't aware of the new legal regime that exists as opposed to mine and it is somehow prejudicial? Just to make sure that I follow you, Judge Southwick, are you saying that we don't know whether Judge Boyle would have determined these burglaries to be aggravated felonies and that somehow prejudices? No, sir. It seems to me that Judge Boyle was not aware of this ruling. We weren't either at the time that she sentenced. And she wasn't aware of the disparagement of this sort of language. And just how that might affect the sentencing judge going forward is something for those sentencing judges to figure out. Should this new understanding at least allow somebody sentenced under the old understanding to a new crack at the district judge? You mean to – I'm sorry. You mean a new crack at it to see if Judge Boyle would decline to apply the disputed language? Would she see the disputed language as having a different effect on her discretion than she did when she didn't realize it was disputed? Well, I suppose, Your Honor, my best answer to that is to go back to the point I made to start the argument about the ex post facto violation and that she was bound to apply the law as it was settled at the time of sentencing. And as a result of her being bound to follow the law as it was settled at sentencing, Mr. Godoy can't show an ex post facto violation based on – and this is the language that's in his objections and the language that he used at sentencing, which is that you should use the 2015 guidelines assuming that I'm right, that precedent will later be overruled. All right. I won't push the point any further with you. Judge Southwick, I apologize if I'm not following directly. I do want to answer your question, so I have nine minutes remaining. I have not – Very well, Judge. If the Court doesn't have any further questions, I'm happy to rest on my briefs. Thank you. Brief rebuttal, Your Honor. Opposing counsel has argued that we cannot – the Supreme Court cannot remove any text from the guidelines. If we win, the text of the guidelines remain exactly the same and completely intact. And that's second, Your Honor. In response to one of your questions, Judge Willett, I want to clarify. This case is not about what's in Section 16B. What we're talking about is what's an aggravated felony under 1101A43. That's what the guidelines tell us to talk about. More specifically, this case is about whether non-generic burglary is an aggravated felony under that statute. The Supreme Court has answered that question in the negative in DiMaia. I want to address – It would be one thing, but subsection 43 is really, really long. It's really long, Your Honor. And I know you had a concern about, well, maybe they didn't cut and paste because of the length. Well, they know how to cut and paste when they want to, yes. But what if we look at the length of the commentary in the drug guidelines? It's much longer than 1101A43. Well, it's commentary as well. It's not the black letter guidelines. I just don't think that would be unworkable. If the Sentencing Commission wished to fix it, fix it in the sense of put it into place where it can't be moved unless the Sentencing Commission changes its mind, it certainly could have done so. And, Judge Willett, I want to click – So you think the sentencing – does it get down to the Sentencing Commission's intent in this case? Well, Your Honor, we look at the text of the statute and then infer intent from the very text. That's the plain meaning.  Yes, Your Honor, and when the text is not ambiguous, and we put that it's not ambiguous here, it says it has the meaning given that term in 1101A43. We don't look to legislative history when the plain – And do we think that the commission intended for anything in 43 that might be declared void for vagueness to be struck from that definition? Well, of course, because it's referenced a statute, and all statutes are subject to – Well, they did come back and amend the ACCA guideline. And they removed burglary. For different reasons, I think. Well, they also removed burglary from the definition of crime of violence in 2L1.2. It's generated so much litigation, so much costly litigation for so many decades. Well, and I would also think the Sentencing Commission has reached the conclusion that burglary doesn't count. That's why it removed it. I think they've reached the conclusion that the definition is hopelessly flawed. Perhaps, but if we look at – And it's not worth the candle, so they – It's not just burglary. It's crime of violence, and all the millions and millions of dollars have been spent over the years trying to figure out if a particular offense, state offense, was a crime of violence. And I think the commission came down and decided it's not worth the argument. Well, Your Honor, further, the commission actually explained their decision in Amendment 798 to the guidelines. They did talk about burglary, but they talked about other issues as well. Yes. But one of the things they talked about was the lower likelihood of violence than we previously suspected with respect to burglary. Judge Willett, I want to get back to your question about what's the difference if you cut and paste into the guidelines and what's not. We're not saying that it wouldn't be vague in the guidelines if they had cut and pasted. It's still – the same language would have been vague. What Beckles tells us is we just can't challenge it as vague, not that it's not vague. Here they didn't cut and paste. It would be vague either way, but it wouldn't be subject to a facial constitutional challenge. That's what Beckles tells us. And I want to come back to the Jones concurrence and Gonzalez-Longoria. Was the argument made in Beckles – and I haven't gone back to look at the briefs. I should have. I'm sorry I didn't. Were there other arguments made other than vagueness in Beckles? In other words, even if you find that vagueness doesn't apply in the challenge of the guidelines, you should vacate the sentence because you can't use this language. And, Your Honor, if there were, the court didn't reach it because the court didn't feel like it had to reach it. Was it in the – have you looked at the briefing? I have not read the briefing recently in Beckles.  It's been at least two years. If there were other issues? I don't remember. I assume the defense raised the fallback issue. The court certainly did not reach that. One more quick point on the Jones concurrence and Gonzalez-Longoria. The reason Judge Jones – one of the reasons Judge Jones didn't want to reach the holding of constitutionality through the guidelines is that once you ring that bell, you cannot unring the bell of unconstitutional vagueness. Now, it didn't happen there, but the Supreme Court did reach that question. And that question is answered and it applies in this case. Well, there's also constitutional avoidance. You do not reach constitutional issues if they can be decided on other grounds. And that's certainly true, Your Honor. And for these reasons, we ask this court to reverse and remand for resentencing under the 2015 guidelines. Thank you. Judge Jones, if I could quickly, I just want to thank Mr. Beck and Mr. Portugal for just being so nimble and responsive. This case has had something of a zigzag journey and a lot of fits and starts. So thank you both for helping us untangle it and being so flexible and responsive to the court as we try to resolve it. We appreciate it. And we are, as a court, are examining, reexamining our policies about holding cases while one is being decided. That's created some issues, as you might understand. We're trying to get to the bottom of a good way to deal with that fairly when you've got the same issue raised in so many cases. And thank you for letting us come in and explain further our points. And thank the Federal District Court for allowing us to use their lovely facilities. Thank you. Judge Sattler, do you have any further questions? Nothing further. I'll be in touch. Okay. Soon. We are adjourned, and the case is under submission. Thank you.